IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHELLE JORDAN,

        **Plaintiff,**

     **v.**

COMCAST CABLE
COMMUNICATIONS
MANAGEMENT, LLC and
COMCAST OF
FLORIDA/GEORGIA/ILLINOIS/
MICHIGAN, LLC,

        **Defendants.**

**1:14-cv-3622-WSD**

## OPINION AND ORDER

This matter is before the Court on Defendants Comcast Cable

Communications Management, LLC's and Comcast of

Florida/Georgia/Illinois/Michigan LLC's (together, "Defendants" or "Comcast")

"Emergency Motion for an Immediate Stay and for Leave to File a Motion to

Compel Arbitration" [26] ("Motion"), Defendants' Motion to Compel Arbitration

[26.3] ("Motion to Compel"), and Plaintiff Michelle Jordan's ("Plaintiff") Motion

for Partial Summary Judgment [24] ("Motion for Summary Judgment").

# I.    BACKGROUND

## A.    Procedural History

On November 10, 2014, Plaintiff filed this action against Defendants alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.  In her Complaint, Plaintiff alleges she "does not have an account with COMCAST and did not previously have an account with COMCAST."  ([1] ¶¶ 3, 12).  She claims her case is about "COMCAST's refusal to respect Ms. Jordan's personal and legal rights in its attempts to collect an alleged debt" on accounts Plaintiff claims she never had.  (Id. ¶ 1).

On December 23, 2014, Defendants learned that Plaintiff's maiden name is "Michelle Boddie," and this name was associated with several Comcast accounts with outstanding bills.  Defendants allege that, despite repeated attempts to determine whether Plaintiff used other identities, Plaintiff evaded questions regarding whether she used the name "Michelle Boddie."  On May 1, 2015, Defendants served their First Set of Requests for Admission ("RFAs").  On June 23, 2015, Plaintiff responded to the RFAs, and admitted that her name is "currently or was previously Michelle Boddie."  (See Mot. ¶ 10).

On July 15, 2015, Defendants filed their Motion, seeking leave to file their Motion to Compel, and to stay all proceedings until the Court determines whether

Plaintiff should be compelled to submit to arbitration.  Defendants attached to their Motion an exhibit containing their Motion to Compel.

On July 22, 2015, Plaintiff filed her Response [27], which addresses the merits of Defendants' Motion to Compel.

On July 22, 2015, the Court ordered [28] Plaintiff to file a supplemental response providing, under oath, the following information:  (1) the legal names and alias she used from June 1, 2013, to June 30, 2014, (2) whether the name "Michelle Boddie" was used by her or on her behalf to obtain services from Comcast, including by opening an account with Comcast, and if so the date on which the services were obtained or the account opened, and, (3) each residence at which she has lived where Comcast provided services, and the names of persons in whose name the Comcast account was listed.  The Court also stayed the deadlines for Defendants to respond to Plaintiff's Amended Complaint [14], complete discovery, and respond to Plaintiff's Motion for Partial Summary Judgment [24] pending the resolution of Defendants' Motion.

On July 28, 2015, Plaintiff filed her Supplemental Response [29], providing the information requested by the Court.  On July 29, 2015, Defendants filed their Reply [30], in which they further argue the merits of their Motion to Compel.

B.   Facts

In Plaintiff's Complaint, she identified herself as "Michelle Jordan," and alleged that she "does not have an account with COMCAST and did not previously have an account with COMCAST." ([1] ¶¶ 3, 12). Defendants state that, after a search of publicly-available records, they found that Michelle Jordan was also known as "Michelle Boddie," which was the name of a Comcast subscriber whose Comcast account listed Plaintiff's phone number as a contact number. (Mot. ¶ 3). In addition, Plaintiff's phone number was connected to multiple accounts, and "Michelle Boddie" was listed as an authorized user on one of those other accounts. (Id.).

On December 23, 2014, Defendants' counsel informed counsel for Plaintiff that public records showed that Plaintiff is also known by her maiden name "Michelle Boddie," and that Comcast records showed that "Michelle Boddie" was connected to several Comcast accounts. (Id. ¶ 4). Plaintiff's January 14, 2015, Amended Complaint again alleged that Plaintiff "does not have an account with COMCAST and did not previously have an account with COMCAST," ([14] ¶ 12), and fails to note that Plaintiff was known as Michelle Boddie. Defendants state that, over the next five months, "despite their promise to check on the issue of Plaintiff's name, Plaintiff and her counsel never admitted that she was also known

4

as Michelle Boddie."  (Mot. ¶ 7).

On May 1, 2015, Defendants served on Plaintiff its first set of RFAs.  The RFAs asked Plaintiff to "[a]dmit that your name is currently or was previously Michelle Boddie."  (Id. ¶ 8).  On June 23, 2015, Plaintiff responded to the RFAs, admitting that her name is "currently or was previously Michelle Boddie."  (Id. ¶ 10).

Defendants argue that public records and Defendants' business records, kept in the ordinary course, establish that Plaintiff entered into an arbitration agreement with Defendants.  (See Reply [30] at 3).  They argue that their business records and public records show Plaintiff had a Comcast account from January 23, 2010, through September 8, 2010, at 681 Flint River Road, Apartment 17A, Jonesboro, GA 30238 (the "Flint River Road" address), that Plaintiff was listed as an authorized user for another account at that same address from October 23, 2010 through August 5, 2011, and that Plaintiff lived at 9307 Forest Knoll Drive, Jonesboro, GA 90238 from December 27, 2010, through November 27, 2011—a period of time for which Comcast records show a Comcast account for services at that address.  (Id. at 4-6).

Defendants also provide LexisNexis Public Record Reports for "Michelle Boddie" and "Michelle Jordan," which reveal that both names are listed as

residents at the Flint River Road address.  (<u>Id.</u> at 4).  The reports for both names also show four e-mail addresses, two of which include the name "Boddie" and one of which includes "Boddi."  (<u>Id.</u> at 4-5).  The reports also contain the first five digits of Plaintiff's Social Security number, the same digits that Comcast has in its internal billing system in connection with the Michelle Boddie Comcast account. (<u>Id.</u> at 5).

The Comcast Agreement for Residential Services includes a binding arbitration provision (the "Arbitration Provision") which governs any disputes between parties.  (<u>See</u> Motion to Compel at 7-8).  The purpose of the arbitration agreement is explained as follows:

> a. **Purpose**.  If you have a Dispute (as defined below) with Comcast that cannot be resolved through an informal dispute resolution with Comcast, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury.

(<u>Id.</u> at 7).  The arbitration provision's scope extends to any "Disputes" between the parties, which are defined as follows:

> b. **Definitions.**  The term "Dispute" means any dispute, claim, or controversy between you and Comcast regarding any aspect of your relationship with Comcast, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence, or any other intentional tort), or any other legal or equitable theory, and includes

the validity, enforceability or scope of this Arbitration Provision (with the exception of the enforceability of the class action waiver clause provided in paragraph 13(f)(2)).  "Dispute" is to be given the broadest possible meaning that will be enforced. As used in this Arbitration Provision, "Comcast" means Comcast and its parents, subsidiaries and affiliated companies and each of their respective officers, directors, employees and agents.

(Id. at 7-8).  The Arbitration Provision also contains a right to opt out.  (Id. at 8).

Defendants offer an affidavit showing that it is Comcast's routine and regular business practice to provide the Agreement for Residential Services to customers in a welcome kit when they initiate their service, and Defendants filed a copy of the agreement Comcast provided to customers in early 2010.  (Id. at 46, 50-66).  In addition, Defendants filed evidence that Michelle Boddie gave her phone number as the primary contact number when she agreed to the Comcast Agreement for Residential Services at the Flint River Road address.  (Id. at 9).  Comcast records confirm that Michelle Boddie did not elect to opt out of the Arbitration Provision.  (Id.).  Because Comcast subscribers agree to binding arbitration, and because Plaintiff was a Comcast subscriber who did not opt out of the Arbitration Provision, Defendants argue Plaintiff is required to arbitrate her claims.

Plaintiff states that, from June 1, 2013 to June 30, 2014, "the only name or alias Plaintiff used was Michelle Jordan."  (Supp. Resp. [29] ¶ 1).  She contends

that the "name 'Michelle Boddie' was not used by Plaintiff or on Plaintiff's behalf to obtain services from Comcast or to open an account with Comcast." (Id. ¶ 2). She states that she "was not aware as to whether any residences where she lived had Comcast services," and she lists the following as her addresses for the last ten years:  8161 Magnolia Drive, Jonesboro, GA 30274; and 9307 Forest Knoll Drive, Jonesboro, GA 30274.  Plaintiff contends that she never lived at the Flint River Road address, and that she "never entered an agreement with Comcast" at that address.  ([27.1] ¶¶ 3-4).  Plaintiff denies the existence of an arbitration agreement between Plaintiff and Defendants.  (Resp. [27] at 2).  She argues, even if a valid arbitration agreement exists, that Defendants waived their right to compel arbitration by waiting until this late stage in litigation to file their Motion to Compel.  (See id. at 12).[1]

## II.   DISCUSSION

### A.   Legal Standards

#### 1.   *Motion for Leave to File a Motion to Compel*

Local Rule 7.1 A.(2) provides:  "[s]pecific filing times for some motions are set forth below.  All other motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery unless the filing party has obtained prior

---

[1]      Additional facts will be set forth as necessary below.

permission of the court to file later."  LR 7.1 A.(2), NDGa (emphasis in original).

          2.    *Motion to Compel Arbitration*

The Federal Arbitration Act ("FAA") applies to any "written provision in any . . . contract evidencing a transaction involving commerce . . . ."  9 U.S.C. § 2. Comcast moves to compel arbitration pursuant to the Arbitration Provision in Comcast's Agreement for Residential Services.  The written Arbitration Provision is in a contract "evidencing a transaction involving commerce," and is therefore governed by the FAA.  See id.; Losapio v. Comcast Corp., No. 1:10-cv-3438, 2011 WL 1497652, at *2 (N.D. Ga. Apr. 19, 2011).

"The determination of the propriety of a motion to compel arbitration pursuant to Section 4 of the Federal Arbitration Act (FAA) is a two-step inquiry." Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004) (footnote omitted).[2] "The first step is to determine whether the parties agreed to arbitrate the dispute." Id. (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)).  The Court must make this determination "by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement

---

[2]      Section Four of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

within the coverage of the [FAA].'" Id. (quoting Mitsubishi Motors Corp., 473

U.S. at 626).  This inquiry must be undertaken against the background of a "liberal

federal policy favoring arbitration agreements."  Moses H. Cone Mem'l Hosp.

v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983) ("[Q]uestions of arbitrability must

be addressed with a healthy regard for the federal policy favoring arbitration.").

Under this policy, it is the role of courts to "rigorously enforce agreements to

arbitrate."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985).

   "Because arbitration is a matter of contract, however, the FAA's strong

proarbitration policy only applies to disputes that the parties have agreed to

arbitrate."  Klay, 389 F.3d at 1200 (citing Mastrobuono v. Shearson Lehman

Hutton, Inc., 514 U.S. 52, 57 (1995)).  Where the existence of an arbitration

agreement is in question, the party seeking to avoid arbitration must unequivocally

deny that an agreement to arbitrate was reached and must offer some evidence to

substantiate the denial.  See Magnolia Capital Advisors, Inc. v. Bear Stearns &

Co., 272 F. App'x 782, 785 (11th Cir. 2008) (citing Wheat, First Sec., Inc.

v. Green, 993 F.2d 814, 819 (11th Cir. 1993)).  More specifically, a party resisting

arbitration must substantiate the denial of the contract with enough evidence to

make the denial colorable.  Id.  When determining whether the parties agreed to

arbitrate their dispute, a court applies state law governing the formation of

10

contracts, giving due regard to the federal policy favoring arbitration.  <u>Caley</u>
<u>v. Gulfstream Aerospace Corp.</u>, 428 F.3d 1359, 1368 (11th Cir. 2005).  In the
absence of an agreement to arbitrate, a court cannot compel the parties to settle
their dispute in an arbitral forum.  <u>Klay</u>, 389 F.3d at 1200 (citing <u>AT&T Techs.,</u>
<u>Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 648 (1986)).

The second step in ruling on a motion to compel arbitration involves
deciding whether "legal constraints external to the parties' agreement foreclosed
arbitration."  <u>Klay</u>, 389 F.3d at 1200 (citing <u>Mitsubishi Motors Corp.</u>, 473 U.S. at
628).

B.    <u>Analysis</u>

1.    *Motion for Leave*

Local Rule 7.1 A.(2) provides:  "[s]pecific filing times for some motions
are set forth below.  All other motions must be filed within thirty (30) days after
the beginning of discovery unless the filing party has obtained prior permission of
the court to file later."  LR 7.1 A.(2), NDGa (emphasis omitted).  The local rules
do not provide a specific filing time for motions to compel arbitration, and thus
Defendants were required to obtain the Court's permission to file their Motion to
Compel.

The Court finds that Defendants have shown good cause to file their Motion

to Compel.  Defendants show that they repeatedly attempted to ascertain whether this case should be arbitrated, and moved to compel arbitration shortly after Plaintiff finally admitted her maiden name.  Accordingly, the Court grants Defendants' Motion seeking leave to file its Motion to Compel.

Further, Defendants' Motion to Compel, Plaintiff's two response briefs, and Defendants' Reply address the merits of whether Plaintiff should be compelled to submit to arbitration.  It appears that all parties have had a full and fair opportunity to brief the arbitration issue.  There is no reason to further delay the resolution of this issue by requiring additional briefing, which is not necessary.  The Court thus addresses the merits of Defendants' Motion to Compel.

2.   *Existence of an Agreement to Arbitrate*

Where, as here, a party "is challenging the very existence of *any* agreement, *including the existence of an agreement to arbitrate* . . . there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the [FAA]."  Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 854 (11th Cir. 1992) (emphasis in original).  In such cases, to sufficiently place contract formation at issue, the challenging party has the burden to: (1) unequivocally deny that the agreement (containing the arbitration clause) was

made; and (2) "substantiate the denial of the contract with enough evidence to make the denial colorable." Id. at 855.

Plaintiff ultimately admitted that her maiden name is Michelle Boddie. ([26.2] at 18).  Defendants offer evidence, in the form of sworn declarations and business records, that Michelle Boddie was the named subscriber for a Comcast account for cable, phone, and internet services from January 23, 2010, through September 8, 2010 at the Flint River Road address.  (See Mot. to Compel at 9; Reply at 4).  Defendants submitted an affidavit showing that it is Comcast's routine and regular business practice to provide the Agreement for Residential Services to customers in a welcome kit when they initiate their service, and Defendants filed a copy of the agreement Comcast provided to customers in early 2010.  (Mot. to Compel at 46, 50-66).  Defendants also submitted evidence that Michelle Boddie gave her phone number as the primary contact number when she agreed to the Comcast Agreement for Residential Services at the Flint River Road address.  (Id. at 9).  Comcast records confirm that Michelle Boddie did not elect to opt out of the Arbitration Provision.  (Id.).

To foreclose the possibility of a claimed mistaken identity, Defendants also provide LexisNexis Public Record Reports for "Michelle Boddie" and "Michelle Jordan," showing that both names are listed as residents at the Flint River Road

13

address.  (Reply at 4).  The reports also show four e-mail addresses, two of which include the name "Boddie" and one of which includes "Boddi," contradicting Plaintiff's contention that the only "name or alias" she used from June 1, 2013, through June 30, 2014, is Michelle Jordan.  (Id. at 4-5).  The reports contain the first five digits of Plaintiff's Social Security number—digits that are an exact match to the Social Security Number that Comcast has in its internal billing system in connection with the Michelle Boddie Comcast account.  (Id. at 5).

Plaintiff contends that she never lived at the Flint River Road address, and that she "never entered an agreement with Comcast at 681 Flint River Road." ([27.1] ¶¶ 3-4).  Her affidavit is the only evidence she offers to support these claims.[3]  (See Resp. at 6; Supp. Resp. at 2).  Plaintiff speculates that Comcast's "records may simply reflect a case of mistaken or stolen identity," and places heavy emphasis on the fact that "Comcast is arguing that [Plaintiff] received

---

[3]    In Regan v. Stored Value Cards, Inc., 85 F. Supp. 3d 1357, 1363 (N.D. Ga. 2015), the Court noted that a supporting affidavit, in most cases, is sufficient to make a denial colorable.  In Regan, however, the plaintiff supported his affidavit with a litany of "facts and factors a reasonable person might consider" in determining whether plaintiff entered into a contract.  Id.  Here, on the other hand, Plaintiff relies solely on her bare assertions that she never lived at the Flint River Road address and never entered into an agreement with Comcast there.  The Court in Regan also noted that "Defendants have not offered any evidence directly rebutting Plaintiff's" evidence.  Id. at 1362.  Defendants' evidence here, however, rebuts Plaintiff's claims by showing that Plaintiff resided at Flint River Road and opened a Comcast account there.

services at . . . two different address [sic] during the exact same time." (Resp. at 6-7) (emphasis omitted). First, the Court finds that it strains credulity to believe that this is a case of mistaken or stolen identity. The evidence presented by Defendants shows that Plaintiff subscribed to Comcast services at the Flint River Road address, and Plaintiff offers only a bare denial to contest the factual showing made. Second, the Court does not see any reason, and Plaintiff does not offer one, why an individual could not subscribe to Comcast services at two separate locations.

The Court finds that Plaintiff's self-serving statements and speculative arguments fail to make her denial colorable, particularly in light of the strong evidence Defendants present. See Chastain, 957 F.2d at 854 (holding that the party denying the existence of a contract has the burden to "substantiate the denial of the contract with enough evidence to make the denial colorable"). The Court's determination that Plaintiff's denial is not colorable is informed by the evidence as well as the totality of the circumstances, including Plaintiff's course of evasiveness in establishing the basic fact of her maiden name—an evasiveness that ultimately required the Court to order Plaintiff to answer simple questions about the names she used and where she received Comcast services. The Court concludes that the evidence, direct and circumstantial, shows Plaintiff received the Comcast

Agreement for Residential Services at the Flint River Road address,[4] where she subscribed for Comcast's services.  Additionally, because Plaintiff utilized Comcast's services and did not opt out of the Arbitration Provision, that provision is effective and binding on her.  See Losapio, 2011 WL 1497652, at *3 ("[V]alid contracts, including contracts containing arbitration clauses, may be formed by a party's continued use or acceptance of services without objection."); Comvest, L.L.C. v. Corp. Sec. Grp., Inc., 507 S.E.2d 21, 24-25 (Ga. Ct. App. 1998) ("Parties may be bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract, or the acceptance by one of the performance by the other.").[5, 6]

3.   *Waiver of Right to Compel Arbitration*

Plaintiff argues that, even if Plaintiff agreed to arbitrate her claims, Defendants waived their right to compel arbitration.  (Resp. at 12).  "A party has

---

[4]   Notably, Plaintiff's affidavit does not directly challenge that she received the Agreement for Residential Services at the Flint River Road address.  She only states that she "never entered an agreement with Comcast" at that address.  ([27.1] ¶ 4).

[5]   That Plaintiff's Flint River Road account was open for almost nine (9) months supports that she continued to use or accept Comcast's services without objection.

[6]   Because the Court finds that Plaintiff entered into an arbitration agreement with Defendants through her Comcast subscription at the Flint River Road address, the Court need not address Defendants' arguments that Plaintiff also entered into arbitration agreements through her use of Comcast services at other addresses.

waived its right to arbitrate if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right and, in so acting, has in some way prejudiced the other party." Grigsby & Assocs., Inc. v. M Sec. Inv., ⸺ F. App'x ⸺, ⸺, 2015 WL 9461341, at *2 (11th Cir. Dec. 28, 2015) (quoting S&H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990)). "Whether waiver has occurred depends on the facts of each case." Id. "A party waives the right to compel arbitration when they substantially participate in litigation to a point inconsistent with an intent to arbitrate . . . ." Interested Underwriters at Lloyd's v. M/T San Sebastian, 508 F. Supp. 2d 1243, 1251 (N.D. Ga. 2007) (quoting Morewitz v. W. of England Ship Owners Mut. Protection and Indem. Assoc., 62 F.3d 1356, 1366 (11th Cir. 1995)) (internal quotation marks omitted). "[T]he party who argues waiver bears a heavy burden of proof." Krinsk v. SunTrust Banks, Inc., 654 F.3d 1194, 1200 n.17 (11th Cir. 2011) (internal quotation marks omitted).

Plaintiff argues that Defendants could have moved to compel arbitration when they first learned, in December 2014, that Plaintiff's maiden name was Boddie, or that Defendants could have "at least served discovery on the topic" at that time. (Resp. at 15). Plaintiff argues that Mims v. Global Credit & Collection Corp., 803 F. Supp. 2d 1349, 1353-54 (S.D. Fla. 2011) applies. In Mims, the party

seeking arbitration "waited over eight months after being served with the Complaint to file its Motion to Compel Arbitration." Id. at 1354. The party participated in the litigation of the dispute in federal court, including by attending hearings and participating in a mediation conference, without attempting to invoke a right to arbitration. The court found that the right to arbitration was waived. Id.

Mims is very different from the case here. Defendants show that they repeatedly attempted to ascertain whether this case should be arbitrated, and moved to compel arbitration shortly after Plaintiff finally admitted her maiden name. In December 2014, Defendants raised with Plaintiff's counsel the issue of Plaintiff's name; on February 9, 2015, Defendants stated in the Joint Preliminary Report and Discovery Plan [16] that the issue of Plaintiff's name was contested; and, on May 1, 2015, Defendants served RFAs on Plaintiff, asking Plaintiff to admit her name is or was Michelle Boddie. When Defendants first raised the issue in December 2014, they informed Plaintiff's counsel that public records showed that Plaintiff is also known as "Michelle Boddie," and that Comcast records showed that "Michelle Boddie" was connected to several Comcast accounts. Plaintiff's claim that she had "no duty or reason to inquire about [her own] maiden name until Comcast served discovery on the topic," (Supp. Resp. at 4), is disingenuous, but consistent with Plaintiff's evasion of her, and her counsel's,

duties in this litigation.  Plaintiff cannot evade arbitration by hiding basic facts and then claim that Defendants waived their right to compel arbitration through the delay that Plaintiff manufactured.  The litigation here is in its early stages. Comcast represents it has not produced any documents or taken any depositions, and has not answered the Amended Complaint.  The Court finds that Defendants have not "acted inconsistently with the arbitration right," and thus did not waive their right to arbitrate this dispute.  Grigsby, 2015 WL 9461341, at *2.

**III.   CONCLUSION**

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Comcast Cable Communications Management, LLC's and Comcast of Florida/Georgia/Illinois/Michigan LLC's (together, "Defendants") "Emergency Motion for an Immediate Stay and for Leave to File a Motion to Compel Arbitration" [26] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel Arbitration [26.3] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Michelle Jordan's Motion for Partial Summary Judgment [24] is **DENIED AS MOOT**.

The Clerk of Court is **DIRECTED** to **ADMINISTRATIVELY CLOSE**

19

this case.

      **SO ORDERED** this 4th day of February, 2016.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE